UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-62444-MIDDLEBROOKS

ARAMARA BEAUTY LLC d/b/a GLOW RECIPE,

  Plaintiff,

v.

HESHENG998, JDAN123, JIAJIA786, KUANKUAN588, LELE123, Li Chao11, NINI668, WEIWEI123 AND YUXUAN1909, Each an Individual, Business Entities, or Unincorporated Association,

  Defendants.

## ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER

THIS CAUSE comes before the Court on Plaintiff Aramara Beauty LLC's ("Plaintiff") *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("*Ex Parte* Application for TRO") (DE 6), filed on December 4, 2025. (DE 6). I have reviewed Plaintiff's *Ex Parte* Application for TRO and all attachments, and applicable law.

In the instant Application, Plaintiff seeks relief from counterfeiting activities which, upon information and belief, are being perpetrated over the Internet by Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" hereto ("Defendants"). Specifically, Plaintiff moves, *ex parte*, for (a) entry of a temporary restraining order; (b) an order restraining the financial accounts used by Defendants; and (c) before expiration of the temporary restraining order, a hearing on Plaintiff's motion for a preliminary injunction

against Defendants pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65, The All Writs Act, 28 U.S.C. § 1651(a), and this Court's inherent authority.

I. **PRELIMINARY FINDINGS OF FACT**

Based on Plaintiff's Complaint and *Ex Parte* Application for TRO, and supporting evidentiary submissions, the Court hereby makes the following preliminary findings of fact.[1]

Plaintiff Aramara Beauty LLC is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office:

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| Glow Recipe | 4,755,299 | June 16, 2015 | 003 – Body and beauty care cosmetics; Make-up; Non-medicated skin care preparations. |
| watermelon glow | 5,322,403 | October 31, 2017 | 003 – Cosmetics. |
| WATERMELON GLOW NIACINAMIDE DEW DROPS | 6,290,899 | March 9, 2021 | 003 – Cosmetics; Non-medicated skin care preparations; all of the aforesaid containing niacinamide in significant part. |
| GLOW RECIPE | 6,934,127 | December 27, 2022 | 035 – Retail store services featuring virtual goods, namely, bags, clothing, headwear, footwear, cosmetics, non-medicated skin care preparations, personal care products, swimwear, art, and accessories for all of the foregoing for use in online virtual worlds; Retail store services featuring cosmetics and non-medicated skin care preparations; On-line retail store services featuring cosmetics and non-medicated skin care preparations. |
| WATERMELON GLOW | 7,062,112 | May 23, 2023 | 003 – Cosmetics; non-medicated skin care preparations; all of the foregoing made in whole or significant part of watermelon. |

---

[1] Although Defendants have not had an opportunity to object to these preliminary findings, there is enough evidence for the Court to make these preliminary findings of fact based on Plaintiff's submissions.

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| WATERMELON GLOW PHA+BHA PORE-TIGHT TONER | 7,512,004 | Sep. 24, 2024 | 003- Cosmetics; Non-medicated skin care preparations, all of the foregoing containing watermelon, polyhydroxy acid, and beta hydroxy acid in whole or significant part. |

(the "Aramara Beauty Marks") which are used in connection with the offer to sell and sale of high-quality goods in the categories identified above. (*See* Declaration of Mee (Christine) Chang in Support of Plaintiff's *Ex Parte* Application for TRO ["Chang Decl."], DE 6-1 ¶ 4. *See also* United States Trademark Registrations of the Aramara Beauty Marks at issue attached as Composite Exhibit 2 to the Complaint, DE 1-3). Plaintiff is a leading prestige skincare brand in the United States known as Glow Recipe®, earning numerous industry awards and accolades. (*See* Compl. ¶ 17).

Defendants, by operating Internet based e-commerce stores under their seller names identified on Schedule "A" ("E-commerce Store Names"), have each advertised, promoted, offered for sale, and sold goods bearing and/or using what Plaintiff has determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the Aramara Beauty Marks (the "Counterfeit Products"). (*See* Chang Decl. ¶¶ 9–14; Declaration of T. Raquel Wiborg-Rodriguez in Support of Plaintiff's *Ex Parte* Application for TRO ["Wiborg-Rodriguez Decl."], DE 6-3 ¶ 2; Declaration of Kathleen Burns in Support of Plaintiff's *Ex Parte* Application for TRO ["Burns Decl."], DE 6-4 ¶¶ 4–5; Composite Exhibit 1 attached to the Burns Decl., DE 6-5).

Although each Defendant may not copy and infringe each of the Aramara Beauty Marks for each category of goods protected, Plaintiff has submitted sufficient evidence showing that each Defendant has infringed, at least, one or more of the Aramara Beauty Marks. (*See* Chang Decl. ¶¶ 12–14; Exhibit 1 attached to the Chang Decl., DE 6-2; Composite Exhibit 1 attached to the Burns Decl.). Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make

counterfeits, reproductions, and/or colorable imitations of the Aramara Beauty Marks. (*See* Chang Decl. ¶¶ 9, 14).

Plaintiff's counsel retained Invisible Inc, a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiff's branded products by Defendants and to document the available payment account data for receipt of funds paid to Defendants for the sale of such counterfeit versions of Plaintiff's branded products. (*See* Chang Decl. ¶ 10; Wiborg-Rodriguez Decl. ¶ 2; Burns Decl. ¶ 3). Invisible Inc accessed each Defendant's respective E-commerce Store Name, placed an order from each Defendant for the purchase of one of the Counterfeit Products, each bearing counterfeits of, at least, one of the Aramara Beauty Marks, and requested each product be shipped to the Southern District of Florida. (*See* Burns Decl. ¶ 4).

Each order was processed online and following the submission of each order, Invisible Inc finalized payment for each of the Counterfeit Products ordered from Defendants to their respective financial account information[2] as identified on Schedule "A" hereto.[3] (*See id.*; *see also* Composite Exhibit 1 attached to the Burns Decl.).[4] At the conclusion of the investigation, the web pages of the Aramara Beauty branded products offered for sale and purchased via each Defendant's E-commerce

---

[2] Defendants have their payments processed on their behalf using money transfer and/or retention/processing services with Shein US Services LLC, which is the marketplace platform's designated payment processor; as such, Defendants' payment information is not publicly disclosed and lists Shein US Services LLC as the payee instead. (*See* Burns Decl. ¶ 4, n.1; Wiborg-Rodriguez Decl. ¶ 4). However, the payment processor can use the information on Schedule "A" to tie an e-commerce store to a reported transaction and identify the respective Defendant's funds held in sub-accounts within their respective aggregate account using the information identified herein. (*See* Burns Decl. at n.1).

[3] Defendants identify a contact e-mail address in connection with their respective E-commerce Store Names, which are included on Schedule "A". (*See* Burns Decl. ¶ 4 at n.2).

[4] I do not approve of the Schedule "A" framework or the posture in which these cases typically proceed. However, for ease of reference, I will cite to the Schedule "A" as though it were it an exhibit. Moving forward, however, the Parties shall refrain from making references to, or attaching, a Schedule A to its motions.

Store Name were sent to Plaintiff's representative for inspection. (*See* Burns Decl. ¶¶ 4-5; Wiborg-Rodriguez Decl. ¶ 2; Chang Decl. ¶ 11; Composite Exhibit 1 attached to the Burns Decl.). Plaintiff's representative reviewed and analyzed the detailed web page captures, of each of the Counterfeit Products purchased and received by Invisible Inc via each Defendant's E-commerce Store Name, and determined each product to be a non-genuine, unauthorized version of of Plaintiff's goods. (*See* Chang Decl. ¶¶ 12–14; Exhibit 1 attached to the Chang Decl.).

## II.     LEGAL STANDARD

The Lanham Act expressly authorizes injunctive relief in cases of trademark infringement and unfair competition. 15 U.S.C. § 1116(a). To obtain a temporary restraining order, the movant must show: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest. *See Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003), *CBS Broadcasting, Inc. v. EchoStar Commc'ns Corp.*, 265 F.3d 1193, 1200 (11th Cir. 2001); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *accord Nitro Leisure Prods., L.L.C. v. Acushnet Co.*, 341 F.3d 1356, 1359 (Fed. Cir. 2003) (applying Eleventh Circuit law to a trademark infringement and dilution case).

Because Plaintiff here seeks entry of a temporary restraining order without giving prior notice (as doing so might cause Defendants to change the ownership or modify e-commerce store data and content, redirect consumer traffic to other e-commerce store names, change payment accounts, and transfer assets and ownership of the E-commerce Store Names), it is imperative that Plaintiff set forth "specific facts ... clearly show[ing] that [it will suffer] immediate and irreparable injury, loss, or damage" if the adverse party is provided notice. Fed. R. Civ. P. 65(b). Plaintiff must

"certif[y] in writing ... the reasons why [notice] should not be required." *Id. Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty, etc.*, 415 U.S. 423, 439 (1974).

### III.        CONCLUSIONS OF LAW

Based upon this Court's preliminary findings of fact and the standards for obtaining the temporary injunctive relief just enunciated, I hereby make the following conclusions of law:

A.     Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the Aramara Beauty Marks, and that the goods Defendants are selling and promoting for sale are copies of Plaintiff's products that bear and/or use copies of the Aramara Beauty Marks.

B.     Because of the infringement of the Aramara Beauty Marks, Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following specific facts, as set forth in Plaintiff's Complaint, *Ex Parte* Application for TRO, and accompanying declarations on file, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendants can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted:

1.     Defendants own or control e-commerce stores operating under their E-commerce Store Names which advertise, promote, offer for sale, and sell products bearing and/or using counterfeit and infringing trademarks in violation of Plaintiff's rights;

2. There is good cause to believe that more counterfeit and infringing products bearing and/or using Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and/or disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products; and

3. There is good cause to believe that if Plaintiff proceeds on notice to Defendants of this *Ex Parte* Application for TRO, Defendants can easily and quickly change the ownership or modify e-commerce store data and content, redirect consumer traffic to other e-commerce store names, change payment accounts, and transfer assets and ownership of the E-commerce Store Names, thereby thwarting Plaintiff's ability to obtain meaningful relief.

C. The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing products if a temporary restraining order is issued is outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of high-quality goods, if such relief is not issued.

D. The public interest favors issuance of the temporary restraining order to protect Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

E. Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing and/or using counterfeits and infringements of the Aramara Beauty Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Products Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F.   Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (citing *FTC v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G.   Considering the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

For all the reasons stated above, Plaintiff has met its burden for the issuance of a temporary restraining order.

Accordingly, upon review of Plaintiff's Complaint, *Ex Parte* Application for TRO, and supporting evidentiary submissions, it is hereby

**ORDERED AND ADJUDGED** that pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, 28 U.S.C. § 1651(a), and this Court's inherent authority, Plaintiff's *Ex Parte* Application for TRO (DE 6) is **GRANTED**, according to the terms set forth below:

### TEMPORARY RESTRAINING ORDER

(1)   Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby temporarily restrained:

> a.   From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using the Aramara Beauty Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and
>
> b.   From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the Aramara Beauty Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale,

8

offer for sale, distribution, or transfer of any products bearing and/or using the Aramara Beauty Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

(2)  Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the Aramara Beauty Marks or any confusingly similar trademarks, on or in connection with all e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the E-commerce Store Names;

(3)  Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the Aramara Beauty Marks, or any confusingly similar trademarks on e-commerce marketplace platforms, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to e-commerce stores registered, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the E-commerce Store Names;

(4)  Each Defendant shall not transfer ownership of the Internet based e-commerce stores under their E-commerce Store Names during the pendency of this action, or until further Order of the Court;

(5) Each Defendant shall preserve copies of all computer files relating to the use of any of the E-commerce Store Names and shall take all steps necessary to retrieve computer files relating to the use of the E-commerce Store Names that may have been deleted before the entry of this Order;

(6) Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Shein US Services LLC, which is a subsidiary of Shein.com which operates the us.shein.com website ("Shein"), and their related companies and affiliates shall immediately (i) identify all financial accounts and/or sub-accounts, associated with the Internet based e-commerce stores operating under the E-commerce Store Names, e-commerce store numbers, infringing product numbers, and/or the e-mail addresses identified on Schedule "A" hereto, as well as any other related accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s), and/or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) divert those restrained funds to a holding account for the trust of the Court;

(7) Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Shein, and their related companies and affiliates, shall further, within five business days of receiving notice of this Order, provide Plaintiff's counsel with all data that details (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all

funds transmitted into the financial account(s) and sub-account(s) which have been restrained. Such restraining of the funds and the disclosure of the related financial institution account information shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Shein, and their related companies and affiliates for any purpose (other than pursuant to a purchase refund chargeback made by a consumer) without the express authorization of this Court;

(8)   Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

(9)   This Temporary Restraining Order shall apply to the E-commerce Store Names, associated e-commerce stores, and financial accounts, and any other e-commerce store names, or financial accounts which are being used by Defendants for the purpose of counterfeiting the Aramara Beauty Marks at issue in this action and/or unfairly competing with Plaintiff;

(10)  As a matter of law, this Order shall no longer apply to any Defendant or associated e-commerce store dismissed from this action or as to which Plaintiff has withdrawn its request for a temporary restraining order;

## BOND TO BE POSTED

(11)  Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

## HEARING

(12) A hearing is set before this Court via videoconference on **January 29, 2026**, at **1:30 -p.m.**, at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction. The instructions to join the videoconference will be emailed to the Parties by the Courtroom Deputy;

(13) After Plaintiff's counsel has received confirmation from the financial institution regarding the funds restrained as directed herein, Plaintiff shall serve a copy of the Complaint, the *Ex Parte* Application for TRO, and this Order, on each Defendant by e-mail and/or online contact form or other means of electronic contact provided on the e-commerce stores operating under the respective E-commerce Store Names, or by providing a copy of this Order by e-mail to the designated e-commerce marketplace platform for each of the E-commerce Store Names so that the marketplace platform, in turn, notifies each Defendant of the Order, or by other means reasonably calculated to give notice which is permitted by the Court. In addition, Plaintiff shall post a copy of the Complaint, the *Ex Parte* Application for TRO, and this Order, as well as all other documents filed in this action on the website located at https://servingnotice.com/Ara2gh/index.html, and shall provide the address to the website to Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof.[5] Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants by regularly

---

[5] In this Circuit, Rule 65, Fed. R. Civ. P., has been interpreted to require that a party have notice of the motion and hearing; perfecting service on a defendant is not a prerequisite to the entry of a preliminary injunction order. *See Corrigan Dispatch Co. v. Casa Guzman, SA.*, 569 F.2d 300, 302 (5th Cir. 1978); *Diamond Crystal Brands, Inc. v. Wallace*, 531 F. Supp. 2d 1366, 1370-71 (N.D. Ga. 2008).

updating the website located at https://servingnotice.com/Ara2gh/index.html or by other means reasonably calculated to give notice which is permitted by the Court;

(14) Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the e-commerce stores, and/or financial institutions, payment processors, banks, escrow services, money transmitters, and marketplace platforms, including but not limited to, Shein, and their related companies and affiliates, shall, at Plaintiff's request, provide Plaintiff's counsel with any e-mail address known to be associated with Defendants' respective E-commerce Store Names;

(15) Defendants shall file with the West Palm Beach Clerk of Court's Office, no later than **January 20, 2026**, at **11:59 p.m.**: (1) any response or opposition to Plaintiff's *Ex Parte* Application for TRO, containing proposed findings of fact and conclusions of law. Plaintiff shall file any Reply Memorandum on or before **January 26, 2026**, at **11:59 p.m.** The above dates may be revised upon stipulation by all parties and approval of this Court. **Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), The All Writs Act, 28 U.S.C. § 1651(a), and Fed. R. Civ. P. 65, and this Court's inherent authority**;

(16) This Temporary Restraining Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth above, or until such further dates as set by the Court or stipulated to by the parties.

(17) Any e-commerce stores, and/or financial institutions, payment processors, banks, escrow services, money transmitters, and marketplace platforms subject to the terms of this Order shall have associated costs paid for by the Plaintiff.

**SIGNED** in Chambers in West Palm Beach, Florida, this ___ day of January, 2026, at ____ P.M.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc.

Counsel of Record

## SCHEDULE "A"
### DEFENDANTS BY NUMBER, E-COMMERCE STORE NAME, FINANCIAL ACCOUNT INFORMATION, AND ASSOCIATED MEANS OF CONTACT

| Def. No. | Defendant / E-commerce Store Name | Store Number | Infringing Product Number | E-mail Address |
|---|---|---|---|---|
| 1 | HESHENG998 | 7934945508 | 58366370 | yiwuzhengxiang123@126.com |
| 2 | JDAN123 | 4244070191 | 49734724 | lianxidalianqiu@163.com |
| 3 | JIAJIA786 | 9229374127 | 49734719 | shuangjiakeji@163.com |
| 4 | KUANKUAN588 | 3245410704 | 61332677 | dubengfushi@163.com |
| 5 | LELE123 | 7495506288 | 49705171 | zlflower71@gmail.com |
| 6 | Li Chao11 | 3031872135 | 70338471 | fanrendob89670@163.com |
| 7 | NINI668 | 5393295704 | 65679511 | aeshop001@outlook.com |
| 8 | WEIWEI123 | 3168598691 | 50134377 | huiyuxuanqingqu@126.com |
| 9 | YUXUAN1909 | 2082825464 | 69158168 | dollarkeyji@outlook.com |